328 So.2d 202 (1976)
George Vernon LUNDQUIST, Jr., Appellant,
v.
GULFSHORE TELEVISION CORPORATION, Appellee.
No. 75-365.
District Court of Appeal of Florida, Second District.
March 3, 1976.
As Modified on Denial of Rehearing March 26, 1976.
Harvey B. Goldberg, Goldberg, Rubinstein & Buckley, Fort Myers, for appellant.
William A. Keyes, Jr., Stewart, Stewart & Jackson, Fort Myers, for appellee.
McNULTY, Chief Judge.
We decide this day the question of ownership of a majority of the stock in Gulfshore Television Corporation, the owner and operator under an F.C.C. license of station WEVU-TV in Naples, Florida.
Appellee corporation received its certificate of incorporation on February 28, 1972. Thereafter, on March 20, 1972, pursuant to a "STOCK SUBSCRIPTION AND LOAN AGREEMENT" entered into by all stockholders, appellant Lundquist, a broadcasting expert and an original promoter and incorporator of the corporation, received 5,200 shares of stock representing some fifty-two per cent (52%) of the authorized issue. As agreed in that "agreement," Lundquist paid for his 5,200 shares by executing a non-interest bearing promissory note for $39,000 (payable in ten years from annual bonuses due him under an employment contract), which sum was equal to the par value of his shares. One payment in the sum of $8,400 was made on the note and receipt thereof was acknowledged by the corporation on or about November 15, 1974.
Thereafter, a falling out occurred as between the minority shareholders and Lundquist. The Board of Directors, through corporate action, dismissed appellant as general manager of the corporation *203 and relieved him of his overall management responsibilities. The corporation, again by Director action, then brought this suit seeking a declaratory judgment and cancellation of appellant's majority stock alleging that such stock was illegally issued because there was no official action by the Board of Directors authorizing payment therefor in the form of the ten-year promissory note aforesaid. Both parties moved, with supporting documents, for summary judgment. Lundquist's motion was denied and the corporation's motion was granted. This appeal ensued. We reverse.
Both parties agree that § 608.15, F.S. 1971, read in pari materia with § 608.16(2), F.S. 1971, allows for the payment of subscribed shares of a corporation by a promissory note such as that executed by Lundquist here. The corporation insists, however, that the Florida corporation laws are "permissive" and that they may be modified by express provisions of the charter. In such case, it is argued, the charter provisions prevail. We can agree, at least arguendo as applied to the facts here.
Article III of the charter of appellee corporation provides:
"The amount of the total authorized stock of the corporation shall be 10,000 shares of common stock, having a par value of Seven and 50/100 ($7.50) Dollars per share, fully paid and nonassessable. Stock may be issued for cash, property, labor, services or goodwill as may be determined by the Board of Directors."
Appellee contends, though we don't agree, that this Article "prohibits" payment for appellant's stock by note. Pursuant thereto "stock may be issued for cash, property, labor, services or goodwill," but there is no express prohibition against accepting other forms of consideration. Additionally, it may well be argued that the promissory note, a chose in action, is sufficient "property," if accepted as here, to constitute consideration within the contemplation of this Article.
In any case, it is clear from the record, particularly from the exhibits and documents of appellee corporation itself, that there are no material issues of fact and that as a matter of law appellant's affirmative defenses of estoppel and/or acquiescence or ratification as against the corporation were established. First of all, as noted, all stockholders executed the stock subscription agreement of March 20, 1972 aforesaid which expressly provided for the promissory note involved herein. Clearly, at that time the minority stockholders did not feel prohibited by Article III of the charter from agreeing to accept that note from Lundquist for the full amount of the par value of the stock issued to him.
Secondly, it is virtually undisputed, and in fact established by the corporation's own exhibits and minutes, that several completed forms, applications and/or clarifications thereof were forwarded at the instance of the corporate directors to the F.C.C. as an inducement (relying on Lundquist's expertise), and in compliance with the commission's "ownership" regulations and requirements, for the issuance of a broadcasting license. Each of these documents was attested to and represented that Lundquist was indeed the majority shareholder. Certainly, the Board of Directors and minority shareholders are in no position now to deny the status of Lundquist as such majority shareholder or the validity of his stock.
Thirdly, in reliance upon the aforesaid attested corporate representations concerning ownership, the F.C.C. did in fact issue the license under which the corporation is now operating. The corporation thus received the benefit of its inducements.
Finally, as late as November 15, 1974, the corporation accepted and receipted for the payment of $8,400 on the note. Can it now, in the face of all the foregoing, gainsay *204 the validity of the note as "consideration" for the stock?
We are of the view, therefore, and so hold, that as a matter of law from the record before us, and as between the parties hereto, that appellant Lundquist is the true owner of the 5,200 shares of stock in appellee corporation now held by him, subject of course to the unpaid balance of his subscription agreement evidenced by his note, and that said shares of stock were and continue to be validly issued, "fully paid" and "nonassessable" within the purview of Article III of the charter, supra.[1]
Accordingly, the summary judgment appealed from should be, and it is hereby, reversed; and the cause is remanded with directions to enter judgment in favor of appellant.
HOBSON and GRIMES, JJ., concur.
NOTES
[1] Cf. Redstone v. Redstone Lumber & Supply Co. (1931), 101 Fla. 226, 133 So. 882.